UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAWN KAVERMAN,

        Plaintiff,                            Hon. Ellen S. Carmody

v.

                                           Case No. 1:17-cv-69

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

## OPINION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. The parties have agreed to proceed in this Court for all further proceedings, including an order of final judgment. Section 405(g) limits the Court to a review of the administrative record and provides that if the Commissioner's decision is supported by substantial evidence it shall be conclusive. The Commissioner has found that Plaintiff is not disabled within the meaning of the Act. For the reasons stated below, the Court concludes that the Commissioner's decision is supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal

standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984). As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 29 years of age on his alleged disability onset date. (PageID.202). Plaintiff successfully completed high school and previously worked as a machine feeder and industrial truck driver. (PageID.64). Plaintiff applied for benefits on November 5, 2015, alleging that he had been disabled since October 1, 2013, due to traumatic brain injury with light sensitivity, insomnia, migraines, left shoulder osteoarthritis, tinnitus, depression, anxiety, sleep disturbances, left knee tendinitis, and memory impairment. (PageID.202-03, 232). Plaintiff's application was denied, after which time he requested a hearing before an Administrative Law Judge (ALJ). (PageID.105-200). On July 7, 2016, Plaintiff appeared before ALJ JoErin O'Leary with testimony being offered by Plaintiff and a vocational expert. (PageID.71-103). In a written decision dated September 1, 2016, the ALJ determined that Plaintiff was not disabled. (PageID.53-66). The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter. (PageID.41-45). Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

**ANALYSIS OF THE ALJ'S DECISION**

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can

---

[1] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b), 416.920(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. §§ 404.1520(c), 416.920(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors. (20 C.F.R. §§ 404.1520(d), 416.920(d));

make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

The burden of establishing the right to benefits rests squarely on Plaintiff's shoulders, and he can satisfy his burden by demonstrating that his impairments are so severe that he is unable to perform his previous work, and cannot, considering his age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which his residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

The ALJ determined that Plaintiff suffered from: (1) degenerative joint disease of the left shoulder and left knee; (2) left ear hearing loss and tinnitus; (3) traumatic brain injury with migraine headaches; (4) mood disorders; and (5) anxiety disorders, severe impairments that whether considered alone or in combination with other impairments, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part

---

4. If an individual is capable of performing her past relevant work, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e), 416.920(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f), 416.920(f)).

404, Subpart P, Appendix 1. (PageID.55). With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform light work subject to the following limitations: (1) he can lift 20 pounds occasionally and 10 pounds frequently; (2) during an 8-hour workday, he can stand and walk for two hours each; (3) he cannot perform overhead reaching; (4) he should not kneel, crawl, or climb ladders, ropes, or scaffolds; (5) he should not work around unprotected heights or dangerous moving mechanical parts; (6) he should not be exposed to occupational vibration; (7) he can work in a moderate noise environment as that term is defined by the Dictionary of Occupational Titles; (8) he is limited to simple, routine, and repetitive tasks not performed at a production rate pace; (9) he is limited to making simple work-related decisions; and (10) he should not be required to work with the general public, but can tolerate occasional interaction with supervisors and co-workers. (PageID.57-58).

The ALJ found that Plaintiff was unable to perform his past relevant work at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, his limitations notwithstanding. *See Richardson*, 735 F.2d at 964. While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform specific jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt to determine whether there

5

exist a significant number of jobs which a particular claimant can perform, his limitations notwithstanding. Such was the case here, as the ALJ questioned a vocational expert.

The vocational expert reported that there existed approximately 422,400 jobs in the national economy which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (PageID.100-02). This represents a significant number of jobs. *See, e.g., Taskila v. Commissioner of Social Security*, 819 F.3d 902, 905 (6th Cir. 2016) ("[s]ix thousand jobs in the United States fits comfortably within what this court and others have deemed 'significant'"). Accordingly, the ALJ concluded that Plaintiff was not entitled to disability benefits.

**I.        Section 12.04 of the Listing of Impairments**

The Listing of Impairments, detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, identifies various impairments which, if present to the severity detailed therein, result in a finding that the claimant is disabled. Plaintiff argues that his impairments meet or medically equal the requirements of Section 12.04 the Listing of Impairments. Section 12.04 of the Listing of Impairments provides as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A.    Medically documented persistence, either continuous or intermittent, of one of the following:
>
>        1.    Depressive syndrome characterized by at least four of the following:

6

a. Anhedonia or pervasive loss of interest in almost all activities; or

b. Appetite disturbance with change in weight; or

c. Sleep disturbance; or

d. Psychomotor agitation or retardation; or

e. Decreased energy; or

f. Feelings of guilt or worthlessness; or

g. Difficulty concentrating or thinking; or

h. Thoughts of suicide; or

i. Hallucinations, delusions or paranoid thinking; or

2. Manic syndrome characterized by at least three of the following:

a. Hyperactivity; or

b. Pressure of speech; or

c. Flight of ideas; or

d. Inflated self-esteem; or

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

  h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R., Part 404, Subpart P, Appendix 1, § 12.04 (2012).

Plaintiff argues that he satisfies sections A and B of this Listing. The ALJ specifically addressed this particular Listing and concluded that Plaintiff did not satisfy the Section A or the Section B criteria. (PageID.56-57). This determination is supported by substantial evidence.

On or about April 13, 2011, Plaintiff, while serving in the United States Army, was involved in an altercation which resulted in Plaintiff being charged with "disorderly conduct while intoxicated and aggravated battery." (PageID.697). Plaintiff was ostracized by his unit as a result of this incident. (PageID.458). Plaintiff thereafter began experiencing anxiety and depression for which he received treatment. (PageID.458). In November 2012, Plaintiff reported that counseling was helpful. (PageID.458). The results of a mental status examination were unremarkable and Plaintiff's GAF score was rated as 66.[2] (PageID.459-60). Plaintiff was deemed "fit for duty without limitation. No psychiatric profile." (PageID.461).

Treatment notes dated November 18, 2013, indicate that Plaintiff was feeling better with treatment. (PageID.396). The results of a mental status examination were unremarkable. (PageID.393-94). Plaintiff's GAF score was rated as 60[3] and conservative treatment was

---

[2] **Error! Main Document Only.**The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994). A score of 66 indicates that the individual is experiencing "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." *Id.* at 34.

[3] **Error! Main Document Only.**A GAF score of 60 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

recommended. (PageID.394). Treatment notes dated February 13, 2014, indicate that Plaintiff met the standards for retention and any deployment. (PageID.376). On February 28, 2014, Plaintiff reported that he was "doing well" on his current medications and was not experiencing any side effects. (PageID.371). The results of an April 22, 2014 mental status examination were unremarkable. (PageID.358). The psychologist reported that Plaintiff "does not meet full criteria for a major depressive disorder, but does meet criteria for unspecified depression." (PageID.359). On June 27, 2014, Plaintiff reported that he was "doing well" on his current medication regimen without any side effects. (PageID.356). The results of a mental status examination were unremarkable. (PageID.357). Plaintiff indicated that he was preparing to be discharged from the Army the following month. (PageID.356).

    On April 2, 2015, Plaintiff participated in an MRI of his brain, the results of which were "negative." (PageID.1159-60). On May 19, 2015, Plaintiff participated in neuropsychological testing. (PageID.829). Plaintiff was "courteous and sociable, and rapport was easily established." (PageID.947). Plaintiff exhibited "no evidence of psychosis. . .nor was he inappropriate at any point; however, his performance in testing appeared exaggerated, with inconsistent and often lengthy latencies between responses to relatively straight-forward questions." (PageID.947). Accordingly, while the results of this examination suggested that Plaintiff was experiencing moderate functional impairment, the results of this testing were deemed invalid "due to failed performance on effortful responding indicators." (PageID.830-32, 947). Treatment notes dated May 27, 2015, indicate that Plaintiff "elected to not pursue psychotherapy." (PageID.943). Treatment notes dated February 3, 2016, indicate that Plaintiff was taking his medications as directed and "experiencing improved control of his target symptoms."

(PageID.1228).

The burden rests with Plaintiff to demonstrate that he satisfies the requirements of a listed impairment. *See Kirby v. Comm'r of Soc. Sec.*, 2002 WL 1315617 at *1 (6th Cir., June 14, 2002). As the ALJ observed, while Plaintiff certainly experiences a certain level of mood and anxiety impairment, his treatment "has been essentially routine and/or conservative in nature." (PageID.61). Moreover, Plaintiff has responded well to such treatment. The ALJ evaluated the evidence of record and determined that Plaintiff failed to meet his burden in this regard. The ALJ's decision is supported by substantial evidence.

## II.        Plaintiff's RFC

A claimant's RFC represents the "most [a claimant] can still do despite [the claimant's] limitations." *Sullivan v. Commissioner of Social Security*, 595 Fed. Appx. 502, 505 (6th Cir., Dec. 12, 2014); *see also*, Social Security Ruling 96-8P, 1996 WL 374184 at *1 (Social Security Administration, July 2, 1996) (a claimant's RFC represents her ability to perform "work-related physical and mental activities in a work setting on a regular and continuing basis," defined as "8 hours a day, for 5 days a week, or an equivalent work schedule"). Plaintiff argues that he is entitled to relief because substantial evidence does not support the ALJ's RFC determination. Specifically, Plaintiff argues that the ALJ failed to sufficiently account for "the time [he] would be off task due to his migraine headaches."

As noted above, the results of an April 2, 2015 MRI examination of Plaintiff's brain were "negative." (PageID.1159-60). A May 19, 2015 examination concluded that Plaintiff's headaches did not prevent him from working. (PageID.1340). On January 30, 2016, Plaintiff participated in a physical examination the results of which were entirely consistent with the ALJ's

11

RFC assessment.  (PageID.1153-55).  As part of this examination, the doctor specifically noted that Plaintiff was not presently taking any medications for his migraine headaches. (PageID.1153).  In sum, the record does not support Plaintiff's argument that his migraine headaches limit him to a greater extent than the ALJ recognized.  Accordingly, this argument is rejected.

## CONCLUSION

For the reasons articulated herein, the Court concludes that the ALJ's decision is supported by substantial evidence.  Accordingly, the Commissioner's decision is **affirmed**.  A judgment consistent with this opinion will enter.


Dated: July 3, 2018                                       /s/ Ellen S. Carmody
                                                          ELLEN S. CARMODY
                                                          U.S. Magistrate Judge